David V. GUTHRIE, Appellant,

v.

Arthur S. FLEMMING, Secretary, Department of Health, Education and Welfare, Social Security Administration, Washington, D. C., Appellee.

No. 7948.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 10, 1959.

Decided Dec. 30, 1959.

W. W. Wharton, Harrisonburg, Va. (George R. Aldhizer, Jr., and James R. Sipe, Harrisonburg, Va., on brief), for appellant.

Jackson L. Kiser, Asst. U. S. Atty., Roanoke, Va. (John Strickler, U. S. Atty., Roanoke, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and ROSZEL C. THOMSEN, District Judge.

BOREMAN, Circuit Judge.

This appeal is from a final order entered by the District Court for the Western District of Virginia granting a motion of the Secretary of the Department of Health, Education and Welfare, Social Security Administration, for summary judgment in his favor. The proceeding in the District Court was instituted pursuant to 42 U.S.C.A. § 405(g) to review a decision of a referee and of the Appeals Council of the Social Security Administration in connection with a claim of David V. Guthrie for Old-Age Insurance benefits under the Social Security Act. Jurisdiction is conferred upon this court by 28 U.S.C. § 1291.

On February 12, 1957, Guthrie and his wife filed their applications for Social Security benefits. Guthrie, a college professor, became a member of the faculty of Emory & Henry College at Emory, Virginia, in September 1955, and although he had taught for years at another school this was the first time he came under the Federal Insurance Contribu-

tions Act, 26 U.S.C. § 3101 et seq. On taking this position, he received a Social Security card and his portion of the FICA tax was paid by withholding from his salary. At that time he was seventy years of age.

Guthrie claimed he had gained the impression that it was necessary to be employed for six full quarters before *any* retirement benefits could be realized, at which time he would be entitled to receive the maximum benefits of $162.80 a month for his wife and himself. He expected to retire from his position at the end of the 1956–1957 school year and, in anticipation, on February 12, 1957, went to the local office of the Social Security Administration at Bristol, Virginia, to secure information as to when he should file his claim for benefits. He apparently had been advised by several persons to "take care of everything in plenty of time" so there would be no delay in receiving payment of the monthly benefits when he became entitled to them.

What happened in the course of Guthrie's visit to the Bristol office is not very clear but it is established, beyond question, that he filled out and signed a form entitled "Application for Old-Age Insurance Benefits". Through usual channels this application was approved March 27, 1957, and Guthrie received his first monthly check in the amount of $131.30 shortly thereafter. Later he returned to the Bristol office to inquire why he had not received the maximum amount of $162.80. The benefits had been calculated and based on earnings for five rather than six quarters and it appears he was told that since his application had been filed and approved prior to April 1, 1957, he was not entitled to the larger benefits to which he would have been entitled if he had filed his application after April 1st. He claimed that when he filled out his application he intended it to be effective as of April 1st.

Guthrie, acting upon information and advice from the local office, on May 6, 1957, prepared and filed with that office a statement as follows:

"I wish to withdraw the claim I filed 2/12/57. I had been informed that it was well to file a few weeks ahead of the time I would have 6 qtrs. so I did not wait until 4/1/57. I had no idea of the effect this would have, and would certainly have waited had I known I would lose several dollars a month for the rest of my life."

A statement was prepared by someone in the local office as follows:

"W/e (wage earner) is a retired college professor who has had a two-year contract with a local college for school years 1955–1956 and 1956–1957. It was not clearly understood at the time he came in to make application that he had had no coverage prior to September, 1955, and that he expected no further covered employment after May, 1957, and he was not advised to withhold his application until after 4/1/57.

\*        \*        \*        \*        \*        \*

"Since w/e was not given an opportunity to withdraw his claim before it was awarded, we believe favorable consideration should be given to his request for withdrawal of the claim he filed on 2/12/57. We are attaching a second application dated 5-6-57."

In response to this attempt to withdraw his application of February 12 and file a second application, Guthrie received from the district office a letter dated May 24, 1957, the pertinent portion of which is as follows:

"Our records show that you previously filed application on February 12, 1957, and that an award was approved to you on March 27, 1957, in the amount of $131.30 for yourself and wife effective October 1956.

"We have reviewed your claim and find that no additional benefits are payable based on your application filed May 6, 1957.

"Your request for withdrawal of your application filed February 12, 1957, may not be approved because

it was not received in this office prior to the date of approval of your award."

The statement in the letter to the effect that the first application could not be withdrawn because an award had already been made under it was in accord with a regulation of the Department of Health, Education and Welfare governing applications for Social Security benefits which provides: (20 C.F.R. 404–615).

"*Withdrawal of applications and requests for revision of records of earnings.* An application or a request for revision of records of earnings of the Administration filed by a claimant or on his behalf by a person authorized to execute an application under § 404.603 may be withdrawn only if the claimant or such other person files a written notice of such withdrawal with the Bureau *and such notice is filed prior to the Bureau's determination upon such application or request.* Thereafter, further action will be taken only upon the filing of a new application or request." (Emphasis supplied.)

On January 28, 1958, a hearing was held at Guthrie's request before a referee of the Social Security Administration where Guthrie was questioned by the referee and testified at some length. In his report the referee concluded that

"* * * it appears that he [Guthrie] was misinformed at the district office; however, there is no provision in the Act or Regulations to permit the referee in any way to correct the situation, an error because of misadvice. When claimant requested a hearing in this case, he stated he had earned wages sufficient for maximum benefits, but was given wrong information by a District Office Representative as to when to file; that his filing date does not permit such maximum benefits. In this he is wholly correct.

"* * * referee agrees that claimant was not properly informed concerning the situation and that this is openly admitted in the Report of Contact * * *. There is no authority whatever for the referee to correct this administrative error."

The referee further found that Guthrie intended to and did file the application he left at the Bristol office on February 12, 1957, and that this intent was controlling upon the referee.

Guthrie thereupon requested a review of the referee's decision by the Appeals Council. That body, on March 31, 1958, denied the review in the following language:

"This case is before the Appeals Council upon request of the claimant for review of the referee's decision rendered in the captioned case. After careful examination of this matter, we are of the opinion that a formal review of the referee's decision would result in no advantage to the claimant; therefore, the Request for Review is hereby denied."

Guthrie brought his action in the District Court praying that the action of the Appeals Council be reversed and set aside, that he be allowed to withdraw his application of February 12, 1957, and be permitted to file the application of May 6, 1957, which was rejected.

The lower court found, in effect, that there was no proper evidence before the referee to support the conclusion that Guthrie acted upon misinformation and improper advice when filing his original application, and stated:

"The argument of counsel for the plaintiff is upon the theory that the plaintiff was deceived by a representative of the defendant and that when plaintiff visited the local office on February 12th he was given false information which caused him to file his application at that time, the result of which was a loss to plaintiff which in equity and good conscience should be corrected. The trouble with this theory is that the facts disclosed by the record do not support it."

We have reviewed the record in its entirety and particularly the transcript

of the testimony of Guthrie before the referee. Since we are of the opinion that the findings of the District Judge are fully warranted by the record, and since his opinion has not been published, we quote further therefrom in footnote one below.[1]

The regulation is clear that an application for benefits may be withdrawn only if the claimant files a written notice of such withdrawal prior to the Bureau's determination upon such application.

There is no effort here to attack the validity of the regulation. We have no occasion to decide whether in other circumstances the Government might be estopped from relying upon a rule of procedure adopted by administrative officers for the dispatch of their official business.

The District Court stated:

"If this court were to overturn the decision of the Secretary, such action could not be founded on any erroneous findings of fact or misin-

[1]. "In testifying before the referee the plaintiff at no time stated that he had acted on false information given him by anyone in the Bristol office. Indeed he does not attempt to repeat any statement made to him or that any was made. In fact the plaintiff made very little mention, and went into no detail, as to what took place when he visited the local office. About all that appears is that in his eagerness to be sure of no delay in receiving payment of his benefits, he went to the local office six or seven weeks before April 1st, and that he then signed the usual form of application. He is even equivocal about this. At one point in his testimony he states that he did not know that the paper he was signing was an application (although it is plainly so headed). A few moments later he said that he understood that he was signing an application for benefits to start at the end of six quarters of his employment, which would be April 1st. And this is the position he now takes in his effort to obtain relief.

"But even conceding that he did act in this belief there is nothing to justify his present attempt to place responsibility for his error on the Bristol office. There is no evidence that he made known his belief or intent to anyone in that office or that he received any advice or information from anyone there. It is to be noted that in his request to withdraw his application (which is hereinbefore quoted) the plaintiff makes no charge that he was misinformed or mislead by anyone in the local office. He appears then to have laid what blame there was on the friends who advised him to file at that time. When on June 10, 1957, plaintiff filed a request that reconsideration be given of the denial of his petition to withdraw his application the reason given was that 'I was not advised when I filed that application that I could receive a much larger benefit by deferring filing until after April 1st.' It was not until after the hearing before the referee that plaintiff, in his request for review by the Appeals Council, charged for the first time that he 'was given wrong information' by an employee in the Bristol office.

"There is nothing in the record which justifies a finding that plaintiff was misinformed in any way by any agent or employee of the defendant in the Bristol office or elsewhere. The most that can be said is that he was not given advice or information which, if given, would presumably have caused him to defer filing his application. But this information was not purposely or intentionally withheld. It was not given because the personnel in the local office were not acquainted with the fact which made their advice pertinent. So far as appears from the record the plaintiff, when he filed his application on February 12th, did not discuss his employment status or disclose that his only social security coverage had been during the time he had been at Emory and Henry. The plaintiff has not attacked or controverted in any way the truthfulness or good faith of the Bristol office in its statement that when plaintiff filed his application 'it was not understood that he had had no coverage prior to September, 1955 and that he expected no further covered employment after September, 1957.' The plaintiff now seeks to place blame on the Bristol office for not advising him on the basis of facts which he alone knew and which he did not disclose.

"So far as the record shows this is simply a case where an applicant for social security benefits prepared and filed an application for such benefits, without first informing himself or seeking information as to matters which would have been to his advantage. When he later found out about his error he sought to withdraw his application and was denied that right because an award had already been made, and the defendant considered that it had no power to permit the withdrawal."

terpretation of the law. We are not justified in disregarding—simply to aid the plaintiff—a determination which is clearly within administrative jurisdiction."

If the regulation is so harsh, conclusive and inflexible as to work an injustice in this and similar instances, the Secretary, if so persuaded, could consider some modification which would permit relief under such unusual circumstances.

The action of the District Court in granting summary judgment in favor of the defendant will be

Affirmed.